IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:11-HC-2173-D

| | | |
|---|---|---|
| ODELL EWING, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| REUBEN F. YOUNG, | ) | |
| | ) | |
| Respondent. | ) | |

On August 31, 2011, Odell Ewing ("petitioner" or "Ewing"), a state inmate proceeding pro se, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 [D.E. 1]. On April 5, 2012, the court reviewed Ewing's petition pursuant to Rule 4 of the Rules Governing Section 2254 Cases, dismissed petitioner's equal protection claim and "Moorish-American" claim for failure to state a claim, and directed Ewing to amend his petition to name the proper party respondent [D.E. 9]. On April 25, 2012, the court directed the clerk to serve Department of Public Safety Secretary Reuben F. Young with the petition [D.E. 14].

On July 2, 2012, Ewing filed a motion for summary judgment [D.E. 20]. On July 12, 2012, respondent answered the petition [D.E. 21] and filed a motion for summary judgment [D.E. 22]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Ewing about the motion for summary judgment, the consequences of failing to respond, and the response deadline [D.E. 24]. On July 23, 2012, Ewing filed a "writ of entry" [D.E. 25]. On August 20, 2012, Ewing filed a motion to amend his petition [D.E. 28], a notice of appearance [D.E. 29], a response in opposition to respondent's motion for summary judgment [D.E. 30], and further information concerning his beliefs as a Moorish American [D.E. 30-1]. On October 12, 2012, Ewing

filed a motion for entry of default [D.E. 32]. As explained below, the court grants Young's motion for summary judgment [D.E. 22] and denies Ewing's motions [D.E. 20, 25, 28, 32].

I.

In 2008, a grand jury in Wake County indicted Ewing and charged him with taking indecent liberties with a minor, a thirteen-year-old girl identified in the indictment as B.S. Resp.'s Mot. Summ. J., Ex. 8 (volume one of trial transcript) at 3.[1] Before trial, the court granted Ewing's motion in limine to exclude any mention of Ewing's prior conviction for taking indecent liberties with a minor as well as a witness statement contending that Ewing was a child molester. Id. 6–11. The court also addressed Ewing's pro se motion concerning his attorney, and Ewing told the court that his concerns about his attorney had been fully addressed. Id. 13–16.

The State's evidence showed that on March 28, 2008, B.S., whose birthdate was March 29, 1994, was living in Raleigh, North Carolina, with her best friend's mother, Iesha Burgess, and Burgess's minor daughter, P.C. Tr. 54. Shortly before 6:30 p.m., P.C., B.S., and Burgess walked from their house to a nearby store, where a group of five or six people, including Ewing, were standing outside. Id. 56. Ewing was twenty-eight years old. Id. 191. As the two girls and Burgess went through the group to enter the store, Ewing told them that "they call him Hugs and that he was passing out hugs." Id. 61. B.S. got separated from Burgess and P.C., and Ewing grabbed B.S. under her arms, pulled her close, and rubbed his hands down and back up the back of her skirt past her buttocks, all the way down to her legs. Id. 61–63. B.S. then pushed Ewing away, and walked into the store where P.C. and Burgess were. Id. 64–66. Ewing had attempted to hug P.C., but she was able to avoid him. Id. 106.

---

[1] The court uses the page numbers identified in the trial transcript, rather than the pagination produced by the court's electronic filing system.

2

When the two girls and Burgess came out of the store, Ewing was sitting by a church located beside the store, holding a wine bottle. Tr. 66, 82. They crossed the street to avoid Ewing as they returned home, and Ewing followed them, saying "stuff about how he liked them young . . . and then he said he wanted [P.C.] because she was younger" than B.S. and that Ewing "liked [P.C.'s] sexy, long legs[.]" Id. 66–69. Burgess got upset and started yelling at Ewing to leave B.S. alone and to go back to the store. Id. 69–70. When the two girls and Burgess got close to their house, they were scared, and yelled for P.C.'s brother to call the police. Id. 70-71.

Raleigh Police Officer J.A. Silvious responded to a dispatch call about a suspicious person in the community causing a disturbance. Resp.'s Mot. Summ. J., Ex. 9 (volume two of trial transcript) 158. Officer Silvious noticed Ewing, who matched the description he had been provided, standing on the sidewalk with a bottle of alcohol in his hand. Id. 158–59. Silvious heard Burgess shout that Ewing was "a child molester." Id. 160. Because the neighborhood was a public housing project, non-residents are prohibited from remaining in the area. Id. 161. Silvious had been assigned to the area for six years, did not recognize Ewing, and thought he might be trespassing. Id. It is also a violation of city code to have an alcoholic beverage on a city sidewalk. Id. Therefore, Officer Silvious asked Ewing several times to stop, but Ewing refused and kept walking, while yelling at Silvious in an agitated tone of voice. Id. 161–63. Officer Silvious arrested and handcuffed Ewing. Id. 167–68, 188–89.

Officer Silvious requested assistance from another patrol officer, and Raleigh Police Officer K.A. Kinney arrived on the scene. Tr. 140. Officer Kinney interviewed B.S., P.C., and Burgess, and observed that B.S. was "visibly upset[,] . . . speaking quickly[, and] . . . was very agitated." Id. 143. B.S. "indicated that [Ewing] had rubbed her buttocks downward toward her thigh and . . . showed [Kinney] exactly how he did it." Id. 146. Kinney also interviewed P.C., who was also "very

3

agitated" and "visibly shaken" and told Kinney that Ewing "tried to grab me and give me a hug" and "said stuff like about how sexy we were and, in quotations, I like them young. The younger the better." Id. 147, 152. Kinney informed Officer Silvious of the women's statements regarding the touching. Id. 191. Officer Silvious then transported Ewing to the Wake County jail to take out an arrest warrant. Id. 192. A magistrate reviewed the case and charged Ewing with taking indecent liberties with a minor. Mot. Amend [D.E. 28], Ex. (arrest warrant).

Ewing did not testify at trial or present any witnesses. The trial court denied Ewing's motion to dismiss the indecent liberties charge for insufficient evidence based on a lack evidence to establish Ewing possessed the requisite intent. Tr. 196–203. However, the trial court granted Ewing's request for a jury instruction on intoxication as a defense to specific intent. Id. 210, 223. During deliberations, the jury requested a written copy of either the criminal statute concerning taking indecent liberties with a minor or the jury instructions. Id. 231. The jury specifically noted that it was "trying to clarify questions [it had] about sexual intent." Id. The trial court granted the jury's request, and the jury later returned a verdict of guilty. Id. 233, 240.

Upon his conviction, the court sentenced Ewing as a habitual felon to a term of imprisonment of 90 to 117 months. Pet. 1. Ewing appealed his conviction, "but later . . . dropped [his] appeal for legal assistance from North Carolina Prisoner Legal Services . . . . and the N.C.P.L.S. dropped their investigations shortly after [Ewing] dropp[ed] the appeal." Id. 2, 11; see also Resp.'s Mot. Summ. J., Ex. 2 (notice of withdrawal of appeal). On April 27, 2010, Ewing filed a proceeding before the North Carolina Industrial Commission asserting "injustice incarceration" which was "[d]ismissed because Raleigh P.D. wasn't a state agency." Pet. 3. On May 17, 2010, Ewing filed a motion for appropriate relief ("MAR") in Wake County Superior Court, which was denied on August 25, 2010. Id. 4, 11; see also Resp.'s Mot. Summ. J., Ex. 4 (order denying MAR). Ewing appealed to the North

4

Carolina Court of Appeals, which dismissed the appeal due to Ewing's failure to provide a copy of his MAR with his petition. Pet. 4, 6, 11; see also Resp.'s Mot. Summ. J., Ex. 6–7 (appeal and order dismissing appeal).

On August 31, 2011, Ewing filed this petition, asserting six grounds for relief: (1) an unspecified violation of his equal protection and due process rights under the Fourteenth Amendment; (2) violations of his Sixth Amendment rights to be "informed of the nature and cause of the accusations, and ... [to] obtain[] witnesses in [his] favor"; (3) "cruel and unusual punishment" in violation of the Eighth Amendment; (4) ineffective assistance of counsel; (5) being Moorish American; and (6) false arrest and conviction. Pet. 6–41. On April 5, 2012, the court dismissed Ewing's equal protection and Moorish-American claims and directed respondent to answer the petition [D.E. 9].

II.

The court first addresses Ewing's motion for summary judgment [D.E. 20], "judgment on partial findings Rule 52" [D.E. 25] (which the court construes as a motion for reconsideration[2]), and motion for default [D.E. 32]. Ewing objects to any dismissal of his Moorish-American claim and asserts he is entitled to summary judgment as a Moorish American. [D.E. 20] 1–7; [D.E. 25] 1–3. The motions are ridiculous and are denied. Cunningham-El v. Whitener, No. 5:10-cv-194-RJC, 2012 WL 137876, at *1 (W.D.N.C. Jan. 18, 2012) (unpublished); El Ameen Bey v. Stumpf, 825 F. Supp. 2d 537, 546 (D.N.J. 2011); Headen-El v. Keller, No. 1:11CV590, 2011 WL 3568282, at *2 (M.D.N.C. Aug. 15, 2011) (unpublished); Caldwell v. Wood, No. 3:07-CV-41, 2010 WL 5441670, at *17 (W.D.N.C. Dec. 28, 2010) (unpublished). Additionally, the court denies Ewing's motion for

---

[2] The clerk did not docket this as a motion.

5

entry of default [D.E. 32], which is based on respondent's alleged failure to respond to his motion for summary judgment.

As for Ewing's motion to amend and for production of documents [D.E. 28], Ewing asserts there was no probable cause to arrest him, and cites his arrest warrant (which was presented to and signed by a magistrate). Id. Ewing's motion lacks merit and is denied. Devenpeck v. Alford, 543 U.S. 146, 152 (2004); Maryland v. Pringle, 540 U.S. 366, 371 (2003); Gerstein v. Pugh, 420 U.S. 103, 119 (1975); United States v. Johnson, 599 F.3d 339, 346 (4th Cir.), cert. denied, 131 S. Ct. 358 (2010); Cloaninger ex rel. Estate of Cloaninger v. McDevitt, 555 F.3d 324, 334 (4th Cir. 2009).

Next, the court addresses respondent's motion for summary judgment. Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

A federal court cannot grant habeas relief in cases where a state court considered a claim on its merits unless (1) the state court decision was contrary to, or involved an unreasonable application

6

of, clearly established federal law as determined by the Supreme Court of the United States, or (2) the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in state court. 28 U.S.C. § 2254(d). A state court decision is "contrary to" Supreme Court precedent if it either "arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to the Supreme Court's result. Williams v. Taylor, 529 U.S. 362, 405 (2000). A state court decision involves an "unreasonable application" of Supreme Court precedent "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case." Id. at 407; see Hardy v. Cross, 132 S. Ct. 490, 493–94 (2011) (per curiam); Bobby v. Dixon, 132 S. Ct. 26, 29–31 (2011) (per curiam); Cavazos v. Smith, 132 S. Ct. 2, 4–8 (2011) (per curiam); Renico v. Lett, 130 S. Ct. 1855, 1862 (2010).

> [Section 2254(d)] does not require that a state court cite to federal law in order for a federal court to determine whether the state court decision is an objectively reasonable one, nor does it require a federal habeas court to offer an independent opinion as to whether it believes, based upon its own reading of the controlling Supreme Court precedents, that the [petitioner's] constitutional rights were violated during the state court proceedings.

Bell v. Jarvis, 236 F.3d 149, 160 (4th Cir. 2000) (en banc). Moreover, a state court's factual determination is presumed correct, unless rebutted by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Sharpe v. Bell, 593 F.3d 372, 378 (4th Cir. 2010).

Congress intended the AEDPA standard to be difficult to meet. Harrington v. Richter, 131 S. Ct. 770, 786 (2011). "Section 2254(d) is part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." Id. at 787. In order to prevail in an action brought under section 2254(d), a

petitioner must show that "there was no reasonable basis to deny relief." Id. at 784; see also DeCastro v. Branker, 642 F.3d 442, 449 (4th Cir.), cert. denied, 132 S. Ct. 818 (2011).

Under the doctrine of procedural default, a federal court generally is precluded from reviewing the merits of any claim that the state court found to be procedurally barred based on independent and adequate state grounds. See, e.g., Dretke v. Haley, 541 U.S. 386, 392 (2004); Daniels v. Lee, 316 F.3d 477, 487 (4th Cir. 2003). The doctrine also applies "when a state court . . . discusses the claim on its merits, e.g., in conducting a plain error review having found a procedural default." Daniels, 316 F.3d at 487. A state rule is "adequate" if it is firmly established and consistently applied by the state court. See Johnson v. Mississippi, 486 U.S. 578, 587 (1988); McCarver v. Lee, 221 F.3d 583, 588 (4th Cir. 2000). A state rule is "independent" if it does not depend upon a federal constitutional ruling. See, e.g., Ake v. Oklahoma, 470 U.S. 68, 75 (1985).

However, a federal court may review a procedurally-defaulted claim if the petitioner demonstrates cause and prejudice resulting from the alleged violation of federal law, or if the petitioner shows that the failure to consider the federal claim will result in a fundamental miscarriage of justice. See, e.g., Coleman v. Thompson, 501 U.S. 722, 750 (1991). A petitioner shows cause by establishing that something external to him prevented him from complying with the state procedural rule. Id. at 753. To show prejudice, a petitioner must show he was actually prejudiced as a result of the alleged violation of federal law. See, e.g., United States v. Frady, 456 U.S. 152, 167–68 (1982).

The court initially examines claims one through three and six of Ewing's petition. Ewing asserts that his rights to due process and to be free from cruel and unusual punishment were violated because he was not told of the charges upon which he was being arrested until he was taken before the state criminal magistrate judge; law enforcement officers never questioned him as to whether the
8

victim's allegations were true or false; law enforcement officers took him hostage; he was not read his Miranda rights; the investigating officers gave the victim confidential information about him; the State withheld a copy of the police dispatch call from him; he was thrown into jail based upon false allegations; law enforcement officers were prejudiced against him; and the pretrial investigation was inadequate in that the investigating officers did not ask the victim proper questions or secure other witnesses. Pet. 7, 9–10, 40–41. "For the sake of argument, Respondent . . . assume[s] that [Ewing] raised [these] grounds . . . in his MAR[,]" which the MAR court summarily denied. Mem. Supp. Resp.'s Mot. Summ. J. 13; see Pet. 8.

To the extent Ewing challenges the sufficiency of the evidence against him, the standard of review for a claim of insufficient evidence on habeas corpus review before AEDPA was whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. Wright v. West, 505 U.S. 277, 284 (1992); Jackson v. Virginia, 443 U.S. 307, 319 (1979). "Now, under the AEDPA provisions codified at 28 U.S.C. § 2254(d)(1), we inquire whether a state court determination that the evidence was sufficient to support a conviction was an objectively unreasonable application of [the standard enunciated in] Jackson." Williams v. Ozmint, 494 F.3d 478, 489 (4th Cir. 2007) (quotations omitted).

In North Carolina, the elements of indecent liberties with a minor are: (1) the defendant was at least 16 years of age; (2) he was five years older than his victim; (3) he willfully took or attempted to take an indecent liberty with the victim; (4) the victim was under 16 years of age at the time the alleged act or attempted act occurred; and (5) the action by the defendant was for the purpose of arousing or gratifying sexual desire. State v. Thaggard, 168 N.C. App. 263, 282, 608 S.E.2d 774, 786–87 (2005); see also N.C. Gen. Stat. § 14–202.1 (2012). "[S]exual gratification may be inferred

9

from the evidence relating to the defendant's actions." State v. Ainsworth, 109 N.C. App. 136, 146, 426 S.E.2d 410, 416 (1993); see also State v. Coleman, 200 N.C. App. 696, 705, 684 S.E.2d 513, 519 (2009), review denied, 364 N.C. 129, 696 S.E.2d 527 (2010).

Here, Ewing has failed to raise a genuine issue of material fact that he would have prevailed on appeal. Ample evidence in the record demonstrates that he committed the crime of taking indecent liberties with a minor. B.S. was thirteen years old on the date of the incident, and Ewing was twenty-eight years old. Ewing rubbed his hands down and back up the back of B.S.'s skirt past her buttocks, all the way down to her legs. Ewing followed the girls and Burgess, saying "stuff about how he liked them young . . . and then he said he wanted [P.C.] because she was younger" than B.S. and that Ewing "liked [P.C.'s] sexy, long legs[,]" and continued to make such comments after Burgess told him to leave B.S. alone. Tr. 66–69. Therefore, the evidence satisfies all the elements of the crime. See, e.g., State v. Midgette, 712 S.E.2d 745 (table), 2011 WL 1662841, at *7 (N.C. Ct. App. May 3, 2011). Thus, Ewing has not shown that the state court's rejection of these claims reached a result contrary to, or involved an unreasonable application of, clearly established federal law. Likewise, the state court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)–(e) (2006); Williams, 494 F.3d at 489. Accordingly, the court grants summary judgment to respondent on this claim.

To the extent Ewing challenges other aspects of his arrest or the pretrial investigation, Ewing has not shown that the state court's rejection of these claims reached a result contrary to, or involved an unreasonable application of, clearly established federal law. See, e.g., Brady v. Maryland, 373 U.S. 83, 87 (1963); Napue v. Illinois, 360 U.S. 264, 269 (1959); Richardson v. Branker, 668 F.3d 128, 144 (4th Cir. 2012); Basden v. Lee, 290 F.3d 602, 614 (4th Cir. 2002); Hoke v. Netherland, 92

10

F.3d 1350, 1355 (4th Cir. 1996); Lucas v. McBride, 505 F. Supp. 2d 329, 358 (N.D. W. Va. 2007). Likewise, the state court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)–(e).

As for Ewing's claim of ineffective assistance of counsel, Ewing asserts that his attorney failed to adequately investigate and interview witnesses, did not thoroughly discuss the case with Ewing before trial, never disclosed to him the possible length of his sentence if he accepted a plea bargain, did not present mitigating evidence at trial or attempt to discredit witnesses, and "presented [at trial] that [Ewing] was guilty of the accusation(s)." Pet. 12–38. Respondent "assume[s] that [Ewing] raised [this claim] in his MAR" and the MAR court summarily denied it. Mem. Supp. Mot. Summ. J. 20-21.

The Sixth Amendment right to counsel includes the right to the effective assistance of counsel at both the trial and appellate levels. See, e.g., Bobby v. Van Hook, 130 S. Ct. 13, 16 (2009) (per curiam); Strickland v. Washington, 466 U.S. 668, 686 (1984). To prevail on a claim of ineffective assistance of counsel at the trial level, a habeas petitioner must establish two things. First, a petitioner must show that the counsel's performance was deficient in that it was objectively unreasonable under professional standards prevailing at the time. See, e.g., Van Hook, 130 S. Ct. at 16; Strickland, 466 U.S. at 687–91. In considering this element, a reviewing court must be "highly deferential" to counsel's performance and must make every effort to "eliminate the distorting effects of hindsight." Strickland, 466 U.S. at 689. Therefore, the court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." Id.; see also Gray v. Branker, 529 F.3d 220, 228–29 (4th Cir. 2008). Second, a petitioner must show that there is a "reasonable probability" that, but for the deficiency, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. A petitioner bears the burden

11

of proving both deficient performance and prejudice. Id. at 687.

Ewing has not raised a genuine issue of material fact concerning whether his counsel's performance was constitutionally deficient. The trial transcript demonstrates that counsel's trial strategy was to challenge the State's assertion that Ewing touched B.S. for sexual gratification, an essential element of the crime of taking indecent liberties with a minor. Counsel's efforts were successful enough that the jury asked the trial court, during deliberation, to clarify the requisite intent. Moreover, counsel convinced the court to suppress any evidence of Ewing's prior conviction for taking indecent liberties with a minor, and obtained a jury instruction on intoxication as a defense. Furthermore, the evidence against Ewing was overwhelming. Thus, Ewing has not shown that the state court's rejection of these claims reached a result contrary to, or involved an unreasonable application of, clearly established federal law. Likewise, the state court's ruling was not based on an unreasonable determination of facts, in light of the evidence presented in the state-court proceeding. See 28 U.S.C. § 2254(d)–(e). Therefore, the court grants summary judgment to respondent on this claim.

In opposition to summary judgment, Ewing asserts his innocence. Resp. Opp'n Mot. Summ. J. 1–7. The "'threshold for any hypothetical freestanding innocence claim [is] 'extraordinarily high.'" Teleguz v. Pearson, 689 F.3d 322, 328 n.2 (4th Cir. 2012) (alterations in original; quoting and citing House v. Bell, 547 U.S. 518, 555 (2006)). Ewing's assertions fall far short of this threshold. Therefore, the court grants summary judgment to respondent.

III.

In sum, the court DENIES petitioner's motions [D.E. 20, 25, 28, 32], GRANTS respondent's motion for summary judgment [D.E. 22], and DISMISSES Ewing's application for a writ of habeas corpus [D.E. 1]. The court also DENIES a certificate of appealability. See 28 U.S.C. § 2253(c).
12

Case 5:11-hc-02173-D   Document 33   Filed 11/01/12   Page 12 of 13

The Clerk of Court shall close this case.

SO ORDERED. This __1__ day of November 2012.

*James Dever* (signature)
JAMES C. DEVER III
Chief United States District Judge

13